UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| UNITED NEIGHBORHOOD ORGANIZATION OF CHICAGO, and UNO CHARTER SCHOOL NETWORK, INC., | ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No.: 14-4044

_____

## COMPLAINT

Plaintiff U.S. Securities and Exchange Commission (the "Commission") alleges as follows:

### NATURE OF THE ACTION

1. This case involves violations of the antifraud provisions of the federal securities laws by UNO Charter School Network, Inc. ("UCSN") and United Neighborhood Organization of Chicago ("UNOC") in connection with their 2011 municipal bond offering. Unless otherwise indicated, both entities are hereinafter referred to as "UNO" or "Defendants."

2. In 2009, the State of Illinois appropriated $98 million to fund school construction by UNO. In connection with this appropriation, UNO entered into two grant agreements with the Illinois Department of Commerce and Economic Opportunity ("IDCEO") – in June 2010 and November 2011 – to build three schools. Each grant agreement contained a conflict of interest provision requiring UNO to (i) certify that no conflict of interest existed at the time it signed the

agreements, and (ii) immediately notify IDCEO in writing of any actual or potential conflicts of interest that subsequently arose. If UNO breached this conflict of interest provision, IDCEO could suspend the payment of grants and recover grant funds already paid to UNO.

3. During 2011 and 2012, UNO violated the conflict of interest provisions in the grant agreements by engaging one company and approving the engagement of another company, owned by family members of the then Senior Vice President/Chief Operating Officer of UNOC ("UNO's COO"), to perform work on the grant-funded schools without notifying IDCEO in writing of the engagements. Under these engagements, UNO contracted to pay one of these companies approximately $11 million to supply and install windows (the "Window Subcontractor"), and the other approximately $1.9 million to serve as an owner's representative during construction (the "Owner's Representative"). These engagements required the approval of the individual who then served as both UNOC's CEO and UCSN's President ("UNO's CEO/President").

4. On October 6, 2011, in connection with its offering of Charter School Refunding and Improvement Revenue Bonds (UNO Charter School Network, Inc. Project) Series 2011A and Series 2011B with a principal amount of $37,505,000 (the "Bonds"), UNO issued an Official Statement in which it affirmatively assured investors of the strength of its "Conflicts Policy" and also disclosed its engagement of the Owner's Representative. However, UNO failed to disclose (i) the engagement of the Window Subcontractor, (ii) that it had breached the conflict of interest provision in one of its grant agreements with IDCEO by engaging the Owner's Representative and approving the engagement of the Window Subcontractor without notifying IDCEO and (iii) the significant consequences, including IDCEO's right to recoup all of its grant money, which could result from UNO's conflicted transactions.

5.  In light of UNO's affirmative assurances in its Official Statement about the strength of its "Conflicts Policy," reasonable investors would have wanted to know about the engagement of the Window Subcontractor, UNO's breach of the IDCEO grant agreements, and the potential consequences of that breach. In particular, investors would have wanted to know that UNO's breach of the grant agreements placed at risk the primary source of funds to pay the Bonds, because if IDCEO had exercised its rights under the grant agreements and recouped the entire amount of the grants, UNO would not have had the cash to repay the grants and therefore would have had to liquidate the very revenue-producing assets (*i.e.*, its charter schools) essential for repayment of the Bonds.

6.  UNO's CEO/President, acting within the scope of his employment, approved and signed the Official Statement on behalf of UNO.

7.  The Commission brings this lawsuit to prevent further harm to investors.

### JURISDICTION AND VENUE

8.  The Commission brings this action pursuant to Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b)].

9.  This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and 28 U.S.C. § 1331.

10. Venue is proper in this Court pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and 28 U.S.C. § 1391. Each of the Defendants has its principal place of business in the Northern District of Illinois, and many of the acts and transactions constituting the violations alleged in this Complaint occurred within the Northern District of Illinois.

11.     Defendants directly and indirectly made use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices, and courses of business alleged herein, and will continue to do so unless enjoined.

### FACTS

#### Defendants

12.     <u>UNO Charter School Network, Inc.</u> ("UCSN") was incorporated as an Illinois not-for-profit corporation on October 3, 1997 with its principal place of business in Chicago, Illinois.  According to UCSN's website, UCSN currently operates a network of 16 charter schools serving over 7,500 students and families each year throughout the City of Chicago and is the largest operator of charter schools in the State of Illinois.  UNO's main funding sources for school construction are state grants and debt (including the Bonds), and its primary funding source for charter school operations is a per pupil fee received from the Chicago Public Schools ("CPS").  UCSN is not registered with the Commission.

13.     <u>United Neighborhood Organization of Chicago</u> ("UNOC") was incorporated as an Illinois not-for-profit corporation on February 10, 1984 and was founded as a Hispanic community organization.  UNOC is an affiliate of UCSN, with its principal place of business in Chicago, Illinois.  UNOC provides management services to UCSN in exchange for a fee pursuant to a contractual arrangement.  UNOC is not registered with the Commission.

#### IDCEO Grants

14.     UNO became involved with charter schools in the late 1990s when it opened its first school, Octavio Paz.  During 2005-2009, UNO added capacity to its organization and developed a network of charter schools.  Despite leasing and purchasing additional buildings,

UNO found itself increasingly in need of more space for additional schools to grow its charter school network.

15. UNO lobbied the State of Illinois for charter school construction grants, and in 2009, the State of Illinois appropriated $98 million to fund the construction of charter schools by UNO. This money was to be distributed to UNO through grants from IDCEO. The $98 million appropriation from the State of Illinois was the largest infusion of funds UNO had ever received.

16. On June 22, 2010, UNO and IDCEO entered into Grant Agreement No. 10-203037 (the "June 2010 Grant Agreement"), under which IDCEO agreed to provide UNO $25 million for the construction of the Soccer Academy Elementary School in Chicago.

17. On November 2, 2011, UNO and IDCEO entered into Grant Agreement No. 12-203291 (the "November 2011 Grant Agreement"), under which IDCEO agreed to provide UNO $35 million for the construction of the Galewood Elementary School and the Soccer High School, both in Chicago. The grant amount for the November 2011 Grant Agreement was increased from $35 million to $53 million in September 2012.

18. UNO's CEO/President approved and signed the June 2010 Grant Agreement and the November 2011 Grant Agreement, including any amendments thereto.

19. Both grant agreements set out the terms and conditions upon which IDCEO agreed to provide UNO the $25 million and $53 million grants. These grant agreements were not publicly available. Section 5.8 of both grant agreements states, in relevant part:

> A conflict of interest exists if [UNO's] officers, directors, agents, employees and family members use their position for a purpose that is, or gives the appearance of, being motivated by a desire for a private gain, financial or nonfinancial, for themselves or others, particularly those with whom they have family business or other ties.
>
> . . . .

> [UNO] must immediately notify [IDCEO] in writing of any actual or potential conflicts of interest, as well as any actions that create or which appear to create a conflict of interest.
>
> . . . .
>
> [UNO] certifies that no conflict of interest as defined [above] exists. If such a conflict or appearance thereof exists or arises, [UNO] must provide immediate notification to [IDCEO] as provided [above].
>
> . . . .
>
> Violations of Section 5.8 may result in suspension or termination of this Agreement, and recovery of Grant Funds provided hereunder.

## Conflicted Transactions

20. At the time UNO entered into the grant agreements, UNO's CEO/President was CEO of UNOC, President of UCSN and a member of the UNOC and UCSN boards, and UNO's COO was Senior Vice President/Chief Operating Officer for UNOC. UNO's CEO/President met UNO's COO in 1995 and was a good friend of UNO's COO and his family.

21. In connection with its construction of the Soccer Academy Elementary School, Galewood Elementary School and Soccer High School, UNO engaged or approved the engagement of a number of contractors, including the following:

| **Contractor** | **Date Engaged** | **Contract Amount** | **Services Provided** |
| --- | --- | --- | --- |
| Window Subcontractor | 1/4/2011 | $4,001,500 | Window Subcontractor for Soccer Academy Elementary School |
| Owner's Representative | 8/8/2011 | $592,744 | Owner's Representative (*i.e.*, UNO's representative) for Soccer Academy Elementary School |
| Window Subcontractor | 3/29/2012 | $2,248,800 | Window Subcontractor for Galewood Elementary School |

6

| Owner's Representative | 8/8/2012 | $1,300,000 | Owner's Representative for Galewood Elementary School and Soccer High School |
|---|---|---|---|
| Window Subcontractor | 12/3/2012 | $4,812,000 | Window Subcontractor for Soccer High School |

22. The Window Subcontractor was owned by a brother of UNO's COO ("COO's Brother 1"), and the Owner's Representative was owned by another brother of UNO's COO ("COO's Brother 2"). COO's Brother 2 was a former UNO board member. Even though the Window Subcontractor and the Owner's Representative were owned by family members of UNO's COO, then a senior officer of UNOC, neither UNO's CEO/President nor anyone else at UNO ever notified IDCEO in writing – as required by Section 5.8 of the grant agreements – of the engagements of the Window Subcontractor or the Owner's Representative.

23. UNO's CEO/President approved and signed the agreements on behalf of UNO to engage the Owner's Representative and also provided final approval for the engagement of the Window Subcontractor.

Bond Offering and Misstatements Regarding Conflicted Transactions

24. In October 2011, the Bonds, pursuant to the terms of the Official Statement, were issued with UCSN as borrower and UNOC as guarantor, making each entity liable to repay the proceeds of the Bonds. The Illinois Finance Authority, an agency of the State of Illinois, was the conduit issuer for the Bonds.

25. The Bonds are special, limited obligations payable solely by UNO. Neither the full faith and credit nor the taxing power of the State of Illinois is pledged to secure payment on the Bonds. Instead, the primary security for the Bonds is the per pupil revenues UNO receives from CPS for operating its schools (including those schools to be constructed with the $98

7

million State of Illinois appropriation). Without revenue from CPS, UNO would be unable to repay the Bonds.

26. In connection with its offering of the Bonds, UNO issued an Official Statement in which it represented that UNO could not "give any assurances that [the IDCEO] grants will be made and, if they are, the schedule on which such grants will be received." Notwithstanding this general admonition, the Official Statement was quite specific about UNO's "Conflicts Policy," devoting an entire subsection to the subject and affirmatively assuring investors that UNO had a "Conflicts Policy" that was more robust than that required for non-profit organizations. In particular, this subsection provided that "[a]lthough the legal standards for avoiding conflicts of interest for non-profit organizations are fairly limited, [UNO] will avoid where possible even the appearance of impropriety." In addition to highlighting the strength of its "Conflicts Policy," UNO also disclosed in this subsection that: (i) it had engaged the Owner's Representative to assist with the construction of the Soccer Academy Elementary School and (ii) COO's Brother 2 (the owner of the Owner's Representative) was the brother of UNO's COO.

27. The Official Statement nonetheless failed to disclose: (i) the engagement of the Window Subcontractor, for a contract to provide goods and services at a cost substantially higher than the cost of the Owner's Representative contract, as a subcontractor for the construction of the Soccer Academy Elementary School; and (ii) that the Window Subcontractor was owned by COO's Brother 1. Further, nothing in the Official Statement disclosed that UNO already was in breach of the conflict of interest provision in the June 2010 Grant Agreement because UNO had already engaged the Owner's Representative and approved the engagement of the Window Subcontractor to assist with the construction of the Soccer Academy Elementary School without advising IDCEO in writing of those engagements; nor did the Official Statement disclose that

8

IDCEO could therefore suspend and/or recoup all of the grant money as a result of UNO's breach.

28. UNO's CEO/President approved and signed the Official Statement on behalf of UNO.

29. After issuing the Official Statement, in which it failed to disclose its breach of the June 2010 Grant Agreement, UNO breached the conflict of interest provision in the November 2011 Grant Agreement by engaging the Owner's Representative and approving the engagement of the Window Subcontractor to assist with the construction of the Galewood Elementary School and Soccer High School and failing to advise IDCEO in writing of these engagements. As with its breach of the June 2010 Grant Agreement, UNO failed to disclose to investors that it had breached the November 2011 Grant Agreement, and the potentially devastating consequences of this breach for UNO.

IDCEO's Discovery of Conflicted Transactions and Suspension of Grant Payments

30. The Chicago Sun-Times published an article on February 4, 2013 concerning UNO's use of the State of Illinois grant funds. The article alleged violations by UNO of Section 5.8 of the IDCEO grant agreements. On February 6, 2013, IDCEO wrote a letter to UNO requesting that it respond to the allegations in the Sun-Times article. The Sun-Times article raised high-profile allegations that called into question UNO's principal source of funds (including the funds needed to finish construction of the Soccer High School in time for the beginning of the next academic year) and raised the prospect of administrative and criminal investigations.

31. UNO responded to IDCEO's letter on February 20, 2013. UNO disputed that it had violated Section 5.8 of the IDCEO grant agreements, but nevertheless stated that it had

decided to terminate its employment relationship with UNO's COO, suspend its contractual relationship with the Owner's Representative, and that it had "authorized the retention of retired federal Judge Wayne Andersen to spearhead an independent audit and review of UNO's policies, practices and procedures related to the expenditure of governmental-sourced funds and to make recommendations for the adoption of policies and procedures to govern future expenditures." UNO's CEO/President approved and signed this letter on behalf of UNO.

      32. In response to UNO's letter, IDCEO sent UNO another letter on April 25, 2013. This letter stated:

> [W]e believe that UNO's failure to notify [IDCEO] of an appearance of a conflict of interest arising from the familial relationship between a senior UNO official and two contractors hired to perform work with Grant Funds constituted a violation of Section 5.8 of each of [the] Grant Agreements . . . , which requires that "[t]he Grantee must immediately notify [IDCEO] in writing of any actual or potential conflicts of interest, as well as any actions that create or which appear to create a conflict of interest."
>
> As a result of UNO's failure to comply with the specific conditions of the Grant Agreements, [IDCEO] is temporarily suspending [the November 2011 Grant Agreement], withholding any further payment of grant funds and prohibiting UNO from incurring additional obligations of grant funds until further notice pursuant to Section 5.5.B. of the Grant Agreement.

In addition to suspending further grant payments to UNO, IDCEO in its April 25, 2013 letter also requested that UNO: (i) respond to a series of inquiries regarding the status of the relationship between the Window Subcontractor and UNO as well as the Owner's Representative and UNO; (ii) share Judge Andersen's recommendations with IDCEO; (iii) perform an audit for each of the IDCEO grants; and (iv) retain a third party reasonably satisfactory to IDCEO to conduct an independent analysis of whether the awarding of contracts to the Window Subcontractor and the Owner's Representative constituted an actual conflict of interest.

33. Prior to IDCEO's suspension of the November 2011 Grant Agreement, UNO had received approximately $25 million of the $53 million IDCEO had agreed to provide under the agreement. Because of IDCEO's suspension, UNO was unable to timely pay its construction contractors, which resulted in liens being placed on the Soccer High School. According to UNOC's then VP of Real Estate, "[t]hose issues alone . . . raised concerns with [UNO's] bond investors and may lead to higher bids on our smaller renovation projects."

Investor Call

34. On March 27, 2013, UNO hosted an investor call "for the purpose of reviewing the previous year's financial results." On this call, a representative from Prudential questioned why UNO engaged in the transactions with the Window Subcontractor and the Owner's Representative when most charter schools prohibit conflict of interest transactions. In response, UNO's CEO/President falsely stated that there were no guidelines on conflicted transactions in the IDCEO grant agreements and therefore the engagements of the Window Subcontractor and the Owner's Representative were not prohibited.

**CLAIM FOR RELIEF**

**Violation of Securities Act Section 17(a)(2)**
**(Against All Defendants)**

35. Paragraphs 1 through 34 are realleged and incorporated by reference as though fully set forth herein.

36. As more fully described in Paragraphs 1 through 34 above, Defendants, in the offer and sale of securities, by the use of means and instruments of transportation or communication in interstate commerce and by use of the mails, directly and indirectly, have obtained money and property by means of untrue statements of material fact and by omitting to

state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37. The Defendants each acted negligently.

38. By engaging in the conduct described above, the Defendants each, directly and indirectly, violated, and unless enjoined there is a substantial risk that Defendants will again violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)], which would result in irreparable harm to Defendants' bondholders.

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

### I.

Issue findings of fact and conclusions of law that the Defendants committed the violations charged and alleged herein.

### II.

Enter an Order of Permanent Injunction restraining and enjoining Defendants, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with Defendants who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)].

### III.

Order UNO to retain an independent monitor to reasonably detect and prevent conflicted transactions. While UNO has taken certain remedial measures following the commencement of

the Commission's investigation, an independent monitor nonetheless is necessary for a period of time to protect bondholders by ensuring that there are no further conflicted transactions.

## IV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## V.

Grant such other relief as this Court deems appropriate.

Respectfully Submitted,

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

Dated: June 2, 2014

s/ Michael J. Mueller
Eric A. Celauro (IL #6274684)
Michael J. Mueller (IL #6297254)

Attorneys for Plaintiff
U.S. Securities and Exchange Commission
Chicago Regional Office
175 West Jackson Blvd., Suite 900
Chicago, Illinois 60604
T.  (312) 353-7390
F.  (312) 353-7398
CelauroE@sec.gov
MuellerM@sec.gov