Case: 1:14-cv-04044 Document #: 7 Filed: 06/03/14 Page 1 of 7 PageID #:40

Case: 1:14-cv-04044 Document #: 4-1 Filed: 06/02/14 Page 2 of 8 PageID #:20



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED NEIGHBORHOOD ORGANIZATION OF CHICAGO, and UNO CHARTER SCHOOL NETWORK, INC., <br><br> Defendants. | Civil Action No.: 14-4044 |

## FINAL JUDGMENT AS TO DEFENDANTS UNITED NEIGHBORHOOD ORGANIZATION OF CHICAGO, AND UNO CHARTER SCHOOL NETWORK, INC.

Plaintiff U.S. Securities and Exchange Commission (the "Commission") having filed a Complaint and Defendants UNO Charter School Network, Inc. and United Neighborhood Organization of Chicago (collectively, "Defendants") having entered a general appearance; consented to the Court's jurisdiction over Defendants and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants and Defendants' agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a)(2) of the

Securities Act of 1933 [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants and Defendants' agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from engaging in any "Conflicted Transaction," which is defined for the purposes of this Final Judgment as any transaction in which any of the Defendants' officers, directors, agents, employees and family members use their position for a purpose that is, or gives the appearance of, being motivated by a desire for a private gain, financial or nonfinancial, for themselves or others, particularly those with whom they have family business or other ties.

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendants shall comply with all of the undertakings and agreements set forth therein, including, but not limited to, the undertakings to:

    i)    retain Patricia Brown Holmes as Independent Monitor for a period of 12 months, pursuant to a written agreement (the "Independent Monitor Agreement"), whose jurisdiction shall be limited to reasonably detecting and preventing Conflicted Transactions involving

Defendants. The Independent Monitor Agreement shall, among other things, describe the authority and responsibilities of the Independent Monitor and the obligations of Defendants with respect to the Independent Monitor, including the following:

    a) the Independent Monitor may prohibit any transaction or transfer of funds that the Independent Monitor reasonably believes to be a Conflicted Transaction, subject to Defendants' right to have any such prohibition reviewed by the Court as set forth below;

    b) for the term of the Independent Monitor Agreement, Defendants may not enter into any agreement involving potential expenditure of funds in excess of an aggregate of $80,000 for the term of such an agreement without written notice to the Independent Monitor not less than 5 business days prior to the execution of such an agreement;

    c) for the first 90 days of the Independent Monitor Agreement, Defendants may not enter into any agreement involving potential expenditure of funds in excess of $20,000 per annum during the term of such an agreement without written notice to the Independent Monitor not less than 5 business days prior to the execution of such an agreement. For the 91st day through the 180th day of the Independent Monitor Agreement, Defendants may not enter into any agreement involving potential expenditure of funds in excess of $40,000 per annum during the term of such an agreement without written notice to the Independent Monitor not less than 5 business days prior to the execution of such an agreement. For the remaining term of the Independent Monitor Agreement, Defendants may not enter into any agreement involving potential expenditure of funds in excess of $60,000 per annum during the term of such an agreement without written notice to the Independent Monitor not less than 5 business days prior to the execution of such an agreement;

d) Defendants may not transfer funds to any outside party in excess of (a) $20,000 for the first 90 days of the Independent Monitor Agreement, (b) $40,000 for the 91st day through the 180th day of the Independent Monitor Agreement, and (c) $60,000 for the remaining term of the Independent Monitor Agreement, without written notice to the Independent Monitor not less than 5 business days prior to the transfer of such funds, unless the Independent Monitor specifically waives such notice for a specific transaction or category of transactions;

e) upon receipt of written notice from Defendants relating to a prospective agreement involving the expenditure of funds, or the potential transfer of funds to an outside party, the Independent Monitor has 5 business days to respond in writing to Defendants as to the basis or bases for disapproving the transaction at issue as being a Conflicted Transaction or the agreement or transfer shall be deemed approved by the Independent Monitor;

f) Defendants, within 120 days after the entry of the Final Judgment, shall implement policies and procedures intended to strengthen internal controls and oversight, with particular focus on the areas of ethics, financial reporting and accounting, as well as training, that are determined by the Independent Monitor to be reasonably sufficient to detect and prevent Conflicted Transactions;

g) the Independent Monitor may retain a law firm as attorney to the Independent Monitor. In addition, the Independent Monitor may, upon motion, seek authority from the Court to engage and employ persons in its discretion to assist in carrying out its duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, financial or business advisers, and forensic experts, subject to the Fee Limitation set forth below; and

h) Defendants shall cooperate fully with the Independent Monitor in the discharge of the Independent Monitor's responsibilities. Among other things, Defendants shall provide all

information requested by the Independent Monitor reasonably relevant to determining whether Defendants are or may be engaging in, or about to engage in, Conflicted Transactions. Defendants or the Commission may petition the Court for resolution of any disputes concerning the Independent Monitor's activities, authorities, determinations or responsibilities.

   ii)  provide the Court, within 30 days after the entry of this Final Judgment, a copy of the duly executed Independent Monitor Agreement;

   iii)  enter into an agreement with the Independent Monitor providing that, for the period of engagement and for a period of two years from completion of the engagement, the Independent Monitor shall not enter into any employment, consultant, attorney-client, auditing or other professional relationship with Defendants, or any of its present or former affiliates, subsidiaries, directors, officers, employees, or agents acting in their capacity as such.  The agreement will also provide that the Independent Monitor will require that any firm with which it is affiliated or of which it is a member, and any person engaged to assist it in performance of its duties under this Final Judgment shall not, without prior written consent of the Court, enter into any employment, consultant, attorney-client, auditing or other professional relationship with Defendants, or any of its present or former affiliates, subsidiaries, directors, officers, employees, or agents acting in their capacity as such for the period of the engagement and for a period of two years after the engagement;

   iv)  provide reasonable compensation to the Independent Monitor relating to fees and expenses, as agreed to by the parties.  However, the total amount of fees and expenses, including any and all expenses incurred by the Independent Monitor for the engagement of attorneys or other third party consultants as specified above, shall not exceed $100,000 per annum ("Fee Limitation");

    v)  not participate in the offer and sale of any municipal securities for a period of 5 years from the date of the entry of this Final Judgment unless Defendants have, at least 6 months prior to such offering:

    a) adopted and ratified written policies and procedures regarding its disclosure obligations ("Disclosure Policies"). Among other things, these Disclosure Policies will designate an individual to be responsible for ensuring compliance with all contractually required disclosure submissions, and will require that individual to annually certify to Defendants that submissions are current and accurate. That individual shall further certify that any information regarding Defendants in any preliminary and/or final offering documents of any future securities offerings for which Defendants are an issuer or obligated person is accurate and complete, and shall ensure that the terms of this Final Judgment are disclosed in any such offering documents within five years from the date of this Final Judgment. Defendants will submit a copy of the Disclosure Policies to the Municipal Securities Rulemaking Board's Electronic Municipal Market Access ("EMMA") website as soon as practicable after adoption and ratification. Additionally, if the Disclosure Policies are amended, such amendments will be provided to EMMA as soon as practicable after such amendments take effect;

    b) ensured that all contractually required disclosure submissions are current and accurate;

    c) provided training for personnel involved in the bond offering and disclosure process ("Bond Offering Personnel") regarding Defendants' disclosure obligations in a bond offering, including obligations under the federal securities laws. Defendants will designate an individual or entity to be responsible for providing such training. Upon completion of the

training, all Bond Offering Personnel will provide a signed certification of completion to Defendants. Such training and certifications will thereafter be provided on an annual basis; and

    d) designated a disclosure committee.

  vi) certify, in writing, compliance with the undertakings set forth above. The certification shall identify the undertakings, provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance. The Commission staff may make reasonable requests for further evidence of compliance, and Defendants agree to provide such evidence. Defendants shall submit the certification and supporting material to Peter K.M. Chan (Assistant Director), with a copy to the Office of Chief Counsel of the Enforcement Division, no later than sixty (60) days from the date of the completion of the undertakings.

IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

Dated: 6/3/14

*[signature]*
UNITED STATES DISTRICT JUDGE