# EXHIBIT A

## INDEPENDENT MONITOR AGREEMENT

This Independent Monitor Agreement ("IMA"), entered into this 24th day of June 2014, between the United Neighborhood Organization of Chicago and UNO Charter School Network, Inc. (collectively, "Defendants") and Patricia Brown Holmes provides as follows:

WHEREAS, on June 3, 2014, Defendants agreed to a "Final Judgment as to Defendants United Neighborhood Organization of Chicago and UNO Charter School Network, Inc." ("Consent Decree") in the matter of *United States Securities and Exchange Commission v. United Neighborhood Organization of Chicago and UNO Charter School Network, Inc.*, Dkt. # 7, No. 1:14-cv-04044, in the United States District Court for the Northern District of Illinois (the "Court");

WHEREAS the Consent Decree, among other things, permanently restrains and enjoins Defendants from engaging in any transaction in which any of Defendants' officers, directors, agents, employees and family members use their position for a purpose that is, or gives the appearance of being, motivated by a desire for private gain, financial or nonfinancial, for themselves or others, particularly those with whom they have family business or other ties ("Conflicted Transaction"), and provides for the appointment of an Independent Monitor to ensure that Defendants comply with their obligation to refrain from engaging in any Conflicted Transactions;

WHEREAS Patricia Brown Holmes has been appointed Independent Monitor (the "Independent Monitor") pursuant to the Consent Decree to monitor Defendants' compliance with the terms of the Consent Decree, and Ms. Holmes has consented to the appointment;

WHEREAS on May 15, 2014, Defendants consented to the selection of Ms. Holmes as Independent Monitor, and are executing this IMA that confers on the Independent Monitor all rights and powers necessary to permit the Independent Monitor to monitor Defendants' compliance with the relevant requirements of the Consent Decree in a manner consistent with the purpose of the Consent Decree;

WHEREAS, the parties to this IMA intend to be legally bound;

NOW, THEREFORE, the parties agree as follows:

1.      **Defined Terms.** All capitalized terms used in this IMA and not specifically defined in this IMA shall have the respective definitions given to them in the Consent Decree.

2.      **Term.** The obligations of this IMA shall remain in effect for 12 months following the date of the IMA's execution ("IMA Term").

3.      **Scope of Independent Monitor's Authority; Jurisdiction.** The Independent Monitor shall have all of the powers and responsibilities conferred upon the Independent Monitor by the Consent Decree. In accordance with the Consent Decree, the Independent Monitor's jurisdiction shall be limited to reasonably detecting and preventing Conflicted Transactions involving the Defendants.

4. **Defendants' Obligation to Cooperate with Independent Monitor.** Defendants shall cooperate fully with the Independent Monitor in the discharge of the Independent Monitor's responsibilities. Among other things, Defendants agree to:

    a. Provide all information requested by the Independent Monitor that is reasonably relevant to determining whether Defendants are, or may be engaging in, or are about to engage in, Conflicted Transactions;

    b. Provide all information requested by the Independent Monitor that is reasonably relevant to determining whether Defendants' policies and procedures intended to strengthen financial controls and oversight are reasonably sufficient to detect and prevent Conflicted Transactions; and

    c. Provide all information requested by the Independent Monitor that is reasonably relevant to providing status reports to the Court regarding the discharge of the Independent Monitor's responsibilities.

Nothing in this IMA shall be construed as requiring Defendants to disclose any material or information that is subject to a legally recognized privilege or that Defendants are prohibited from disclosing by reason of law or an agreement with a third party.

5. **Independent Monitor's Authority to Prohibit Transactions.** Throughout the IMA Term, the Independent Monitor may prohibit any agreement or transfer of funds that the Independent Monitor reasonably believes to be a Conflicted Transaction. Nothing in this IMA shall be construed as limiting Defendants' right to have any such prohibition reviewed by the Court pursuant to Paragraph III(i)(h) of the Consent Decree.

6. **Required Notice to Independent Monitor for Agreements Involving Expenditures of Funds.** During the IMA Term, Defendants agree to abide by the following restrictions on their ability to enter into agreements involving the expenditure of funds:

    a. Defendants may not enter into any agreement involving the potential expenditure of funds in excess of an aggregate of $80,000 over the term of such an agreement without giving written notice of the proposed agreement ("Agreement Notice") to the Independent Monitor at least 5 business days prior to the execution of such an agreement;

    b. For the first 90 days of the IMA Term, Defendants may not enter into any agreement involving the potential expenditure of funds in excess of $20,000 per annum during the term of such an agreement without providing an Agreement Notice to the Independent Monitor at least 5 business days prior to the execution of such an agreement;

    c. From the 91st day through the 180th day of the IMA Term, Defendants may not enter into any agreement involving the potential expenditure of funds in excess of $40,000 per annum during the term of such an agreement without providing an Agreement Notice to the Independent

Monitor at least 5 business days prior to the execution of such an agreement;

d. From the 180th day until the end of the IMA Term, Defendants may not enter into any agreement involving the potential expenditure of funds in excess of $60,000 per annum during the term of such an agreement without providing an Agreement Notice to the Independent Monitor at least 5 business days prior to the execution of such an agreement.

7. **Required Notice to Independent Monitor for Transfers of Funds to Outside Parties.** During the IMA Term, Defendants agree to abide by the following restrictions on their ability to transfer funds to any outside party:

a. For the first 90 days of the IMA Term, Defendants may not transfer in excess of $20,000 in funds to any outside party without providing written notice of the proposed transfer ("Transfer Notice") to the Independent Monitor at least 5 business days prior to the transfer of such funds;

b. For the 91st day of the IMA Term through the 180th day of the IMA Term, Defendants may not transfer in excess of $40,000 in funds to any outside party without providing a Transfer Notice to the Independent Monitor at least 5 business days prior to the transfer of such funds;

c. For the 180th day of the IMA Term until the end of the IMA Term, Defendants may not transfer in excess of $60,000 in funds to any outside party without providing a Transfer Notice to the Independent Monitor at least 5 business days prior to the transfer of such funds.

8. **Waiver of Notice to Independent Monitor.** The Independent Monitor can, at its discretion, waive the notice requirements for transfers of funds to outside parties provided in Paragraphs 7(a)-(c) for a specific transaction or a specific category of transactions.

9. **Independent Monitor's Notice of Prohibition for Conflicted Transaction.** The Independent Monitor shall have 5 business days from the date it receives an Agreement Notice or Transfer Notice from Defendants ("Transaction Review Period") for the Independent Monitor to review the agreement or transfer and give notice to Defendants that the agreement or transfer constitutes a Conflicted Transaction that Defendants are prohibited from executing ("Notice of Prohibition"). The Notice of Prohibition shall specify the basis or bases for the Independent Monitor's determination that the agreement or transfer constitutes a Conflicted Transaction. Defendants shall not execute the prospective agreement or transfer described in the Agreement Notice or Transfer Notice to the Independent Monitor until the end of the Transaction Review Period.

10. **Extension of Transaction Review Period.** In the event that the Independent Monitor determines that additional time is needed for the review of a potential agreement or transfer, the Independent Monitor shall submit a written request for extension of the Transaction Review Period to the General Counsel of the Defendants. Such extension shall not exceed a period of two business days from the expiration of the initial Transaction Review Period (the

"Extension Period") and shall be subject to the prior written approval of the Defendants, which approval will not be unreasonably withheld.

11. **Decision Not to Send Notice Constitutes Approval.** If the Independent Monitor elects not to send a Notice of Prohibition before the end of the Transaction Review Period or Extension Period, the agreement or transfer shall be deemed approved by the Independent Monitor.

12. **Independent Monitor Approval of Internal Control and Oversight Procedures.** Defendants shall regularly consult the Independent Monitor as to the content of the policies and procedures, particularly in the areas of ethics, financial and accounting reporting, and training, that Defendants intend to implement in order to strengthen their internal controls and oversight. Within 90 days after the entry of the Final Judgment, Defendants shall provide the Independent Monitor with all policies and procedures that Defendants intend to implement in order to strengthen their internal controls and oversight. Upon receipt of the policies and procedures, the Independent Monitor shall have 10 business days to review them and determine whether they are reasonably sufficient to detect and prevent Conflicted Transactions. If the Independent Monitor determines that Defendants' policies and procedures are not reasonably sufficient to detect and prevent Conflicted Transactions, the Independent Monitor shall provide written notice to Defendants informing them that the policies and procedures are not reasonably sufficient to detect and prevent Conflicted Transactions ("Insufficiency Notice"). The Insufficiency Notice shall specify the basis or bases for the Independent Monitor's determination. Defendants will have 5 business days after receipt of the Insufficiency Notice to redress the deficiencies identified in the Insufficiency Notice and provide the Independent Monitor with a revised set of all policies and procedures that they intend to implement in order to strengthen their internal controls and oversight.

13. **Decision Not to Send Insufficiency Notice Constitutes Approval.** If the Independent Monitor elects not to send an Insufficiency Notice within 10 business days of receipt of Defendants' policies and procedures, the policies and procedures shall be deemed approved by the Independent Monitor.

14. **Independent Monitor Reporting Requirements.** The Independent Monitor must submit a status report to the Court regarding the discharge of the Independent Monitor's responsibilities within 180 days of the entry of the Final Judgment. The Independent Monitor must submit a final report to the Court regarding the discharge of the Independent Monitor's responsibilities at the end of the IMA Term.

15. **Independent Monitor May Ask Commission to Petition Court.** The Independent Monitor may ask the United States Securities and Exchange Commission (the "Commission") to petition the Court on the Independent Monitor's behalf to resolve any disputes concerning the Independent Monitor's activities, authorities, determinations, or responsibilities pursuant to Paragraph III(i)(h) of the Consent Decree. The Commission may grant or deny the Independent Monitor's request at its discretion.

16. **Independent Monitor's Designees.** The Independent Monitor may retain a law firm as attorney to the Independent Monitor. In addition, the Independent Monitor may, upon

motion, seek authority from the Court to engage and employ persons in its discretion to assist in carrying out its duties and responsibilities under this IMA, including, but not limited to, accountants, attorneys, financial or business advisers, and forensic experts (collectively, "Designees") subject to the Fee Limitation specified in Paragraph 17.

17. **Independent Monitor Compensation.** Defendants shall provide reasonable compensation to the Independent Monitor relating to fees and expenses. However, the total amount of fees and expenses, including any and all expenses incurred by the Independent Monitor for the engagement of Designees, as specified in Paragraph 16 hereof, shall not exceed $100,000 per annum (the "Fee Limitation").

18. **Future Employment Restrictions.** For the duration of the IMA Term and for a period of two years from the end of the IMA Term, the Independent Monitor shall not enter into any employment, consultant, attorney-client, auditing or other professional relationship with Defendants, or any of their present or former affiliates, subsidiaries, directors, officers, employees, or agents acting in their capacity as such. The Independent Monitor will require that any firm with which it is affiliated or of which it is a member, and any Designee engaged to assist it in performance of its duties under this IMA shall not, for the period of the engagement and for a period of two years after the engagement, enter into any employment, consultant, attorney-client, auditing or other professional relationship with Defendants, or any of their present or former affiliates, subsidiaries, directors, officers, employees, or agents acting in their capacity as such, except with prior written consent of the Court.

19. **Confidentiality.** The Independent Monitor shall maintain the confidentiality of all information provided to the Independent Monitor by the Defendants. Any materials or documents that Defendants consider confidential should be designated as "CONFIDENTIAL" prior to transmission or delivery to the Independent Monitor. Such information shall be used by the Independent Monitor only in connection with the performance of the Independent Monitor's duties under this IMA. Such information shall not be disclosed by the Independent Monitor to any third party other than:

    a.   Designees employed by, or working with the Independent Monitor under this IMA, in which case such persons shall be informed and agree in writing to abide by the confidentiality obligations applicable to the Independent Monitor, in accordance with Paragraph 20 below, or

    b.   persons employed by the Commission and working on this matter;

    c.   other persons only if consented to by Defendants in advance of such disclosure.

20. **Confidentiality and Third Parties.** To the extent that the Independent Monitor wishes to retain any Designees, employee, agent, or consultant or any other third party to assist the Independent Monitor in accordance with the Consent Decree, the Independent Monitor shall ensure that, prior to being retained, such persons execute a confidentiality agreement in a form agreed upon by the Independent Monitor and Defendants.

21.     **Destruction of Confidential Information.** Upon the end of the IMA Term, the Independent Monitor shall promptly destroy all materials provided to the Independent Monitor by Defendants.

22.     **No Fiduciary or Attorney-Client Relationship.** The Independent Monitor shall not have a fiduciary responsibility to Defendants. Neither the Independent Monitor nor any law firm retained as a Designee by the Independent Monitor shall have an attorney-client relationship with the Defendants or the Commission.

23.     **Availability for Consultation.** The Independent Monitor and the Defendants shall each be reasonably available to one another to discuss any questions or issues that any of them have concerning compliance with the Consent Decree or this IMA as it relates to Defendants.

24.     **Indemnify and Hold Harmless.** Defendants shall indemnify and hold harmless the Independent Monitor against any losses, claims, damages, liabilities, or expenses arising out of, or in connection with, the performance of the Independent Monitor's duties, including all reasonable fees of counsel and other expenses incurred in connection with the preparation for, or defense of, any claim, whether or not resulting in any liability, except to the extent that such losses, claims, damages, liabilities, or expenses result from willful or wanton acts by the Independent Monitor.

25.     **Conflicts of Interest.** In the event that, during the IMA Term, the Independent Monitor becomes aware that it has or may have a conflict of interest that may affect or could have the appearance of affecting the performance by the Independent Monitor, or persons employed by, or working with, the Independent Monitor, of any duty under this IMA, the Independent Monitor shall promptly inform Defendants, the Commission, and the Court of such conflict or potential conflict.

26.     **Choice of Law.** This IMA and the rights and obligations of the Defendants and the Independent Monitor shall in all respects be governed by the laws of Illinois, including all matters of construction, validity and performance.

27.     **Preemption.** The Consent Decree shall govern this IMA and any IMA provisions that conflict or are inconsistent with the Consent Decree may be declared null and void by the Court and any provision not in conflict shall survive and remain a part of this IMA.

28.     **Relationship Between Independent Monitor and Defendants.** It is understood that the Independent Monitor will be performing its functions under this IMA as an independent contractor and that the relationship of employer and employee shall not exist between the Defendants and the Independent Monitor.

29.     **No Third-Party Beneficiaries.** This IMA is for the sole benefit of the Defendants and the Independent Monitor and nothing in this IMA, express or implied, shall give or be construed to give any other person any legal or equitable rights under this IMA.

30.     **Integration Clause.** This IMA contains the entire agreement between the parties with respect to the matters described herein and replaces any and all prior agreements or understandings, whether written or oral.

31.     **Notices.** Any notices or other communications required to be given, shall be sent by mail, overnight courier, electronic mail, or facsimile (with acknowledgment or receipt of such facsimile having been received), to the applicable party at its address below (or to such other address as to which such party shall hereafter notify the other party).

If to the Independent Monitor, to:

> Patricia Brown Holmes
> Schiff Hardin LLP
> 233 South Wacker Drive
> Suite 6600
> Chicago, IL 60606
> (312) 258-5722 (t)
> (312) 258-5600 (f)
> pholmes@schiffhardin.com

If to the Defendants, to:

> Annie Pike, General Counsel
> United Neighborhood Organization of Chicago
> 954 West Washington Boulevard, 3rd Floor
> Chicago, IL 60607
> (312) 432-6301 (t)
> (312) 432-0077 (f)
> apike@uno-online.org

32.     **Amendment.** No amendment, modification, termination, or waiver of any provision of this IMA shall be effective unless made in writing and signed by all parties. Any such amendment, modification, termination, or waiver shall be consistent with the terms of the Consent Decree.

33.     **Manner of Execution.** This IMA may be signed in counterparts.

IN WITNESS THEREOF, the parties have executed this Independent Monitor Agreement

**DEFENDANTS**

United Neighborhood Organization of Chicago

Pastor Freddy Santiago, Chairman

Dated: 6/27/14

**INDEPENDENT MONITOR**

Patricia Brown Holmes

Patricia Brown Holmes

Dated: 6/24/2014

UNO Charter School Network, Inc.

Richard L. Rodriguez, Chairman

Dated: _____

IN WITNESS THEREOF, the parties have executed this Independent Monitor Agreement.

**DEFENDANTS**

United Neighborhood Organization of Chicago

_____
Pastor Freddy Santiago, Chairman

Dated: _____

**INDEPENDENT MONITOR**

Patricia Brown Holmes

_____
Patricia Brown Holmes

Dated: 6/24/2014

UNO Charter School Network, Inc.

_____
Richard L. Rodriguez, Chairman

Dated: 6.30.14